UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VINCENT LICATA,

    Plaintiff,

vs.                             Case No.: 8:11-cv-1846-T-33MAP

TRI-STATE EMPLOYMENT SERVICES,
INC., a New York corporation,
TRI-STATE EMPLOYMENT SERVICES,
INC., a Nevada corporation,
CORPORATE RESOURCE SERVICES,
INC., and ROBERT CASSERA,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court pursuant to Defendants Tri-State Employment Services, Inc., Corporate Resource Services, Inc., and Robert Cassera's Motion to Dismiss Count III of Plaintiff's Complaint and Demand for Jury Trial (Doc. # 6), filed on September 22, 2011.[1] Plaintiff filed a response in opposition on October 6, 2011. (Doc. # 8). For

---

[1] For purposes of this Order, when the Court refers to "Defendants" collectively, it includes Tri-State Employment Services, Inc., a Nevada corporation, Corporate Resource Services, Inc., and Robert Cassera, but excludes Tri-State Employment Services, Inc., a New York corporation, as the latter is not named in Count III of the Complaint and is not a party to the Motion to Dismiss. To minimize confusion between the parties, Tri-State Employment Services, Inc., a Nevada corporation, will be referred to as "Services" and Tri-State Employment Services, Inc., a New York corporation, will be referred to as "Tri-State."

the reasons that follow, the Court grants the motion in part and denies the motion in part.

I.  **Background**

Prior to March 2008, Plaintiff was engaged in business through several entities that owned and operated various temporary employment service firms. (Doc. # 1 at ¶ 8). Defendants Services, an affiliate of Tri-State, and Cassera, were in the business of providing temporary employment services. (Id. at ¶ 9). As part of Services' desire to expand its business in late 2007, various agents of Services, including Cassera, entered into negotiations with Plaintiff to purchase all of the assets of Plaintiff's businesses and formed an entity through which the acquisition could be made. (Id. at ¶ 10). On or about March 24, 2008, Plaintiff agreed to sell the assets of his businesses to Tri-State, and the two parties executed an asset purchase agreement. (Id. at ¶ 11). Tri-State paid a portion of the purchase price at closing and executed a promissory note for the remaining installment payments. (Id. at ¶ 12).

In connection with the acquisition, Plaintiff and Tri-State also executed an employment agreement which designated Plaintiff as vice-president of Tri-State and enumerated various types of commission-based compensation Plaintiff was

to receive for bringing in new clients. (Id. at ¶¶ 13, 15-19). As a condition of Plaintiff's acceptance of the promissory note, Services agreed to serve as guaranty for Tri-State's payment and performance obligations under the promissory note, the asset purchase agreement, and the employment agreement. (Id. at ¶¶ 14, 41).

Following the execution of the employment agreement, Plaintiff procured various new clients for Tri-State, which entitled him to commission payments under the employment agreement. (Id. at ¶ 22). However, Plaintiff claims that Services and Cassera engaged in acts designed to cause Plaintiff's clients to terminate their relationships with Tri-State, thus interfering with his entitlement to further commission payments from Tri-State. (Id. at ¶ 45).

Further, Plaintiff asserts that due to his efforts, Tri-State acquired a business known as Tri-Overload Staffing, Inc. (Id. at ¶ 24). However, in September 2010, Services and Cassera, through their affiliated entity, Defendant Corporate Resource Services, Inc., acquired Tri-Overload Staffing without paying the requisite commission to Plaintiff. (Id. at ¶¶ 46-47). On July 26, 2011, Tri-State terminated Plaintiff's employment. (Id. at ¶ 27).

Plaintiff filed suit against Defendants and Tri-State on August 16, 2011, alleging breach of contract, requesting enforcement of the guaranty agreement, and alleging tortious interference with a business relationship. (Doc. # 1). Defendants seek an order dismissing Count III for tortious interference under Rule 12(b)(6), Fed. R. Civ. P.

II. **Legal Standard**

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Alabama, 30 F.3d 117, 120 (11th Cir. 1994)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings.[2] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134

---

[2] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent by such a motion."

(11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court may consider the various exhibits attached to the Complaint without converting the Motion to Dismiss into one for summary judgment.

**III. Analysis**

Count III of Plaintiff's Complaint alleges that Defendants engaged in intentional and unjustified interference with Plaintiff's business relationship with Tri-State when Services and Cassera caused Plaintiff's clients to terminate their relationships with Tri-State and when Defendants acquired Tri-Overload Staffing yet failed to pay Plaintiff commission from the acquisition. (Doc. # 1 at ¶¶ 45-48). Plaintiff asserts that this interference was "malicious, willful, oppressive and/or in reckless disregard" of his rights. (Id. at ¶ 49).

Under Florida law, which the Court applies in this diversity case, "the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral

Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (citation omitted); see also Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812 (Fla. 1994). The only disputed element in this case is the third one: whether the Plaintiff has sufficiently alleged that Defendants intentionally and unjustifiably interfered with the relationship between Plaintiff and Tri-State.

With regard to the third element, "Florida appellate courts have explained that for the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." W.D. Sales & Brokerage, LLC v. Barnhill's Buffet of Tenn., Inc., 362 Fed. App'x 142, 143 (11th Cir. 2010) (citations omitted). Further, "a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party." Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1294 (11th Cir. 2001) (internal citations omitted). "A defendant is not a 'stranger' to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." W.D. Sales, 362 Fed. App'x at 143 (internal citations omitted). Additionally, the general rule is that "an agent of a corporate party to a contract . . . cannot be

considered to be a separate entity outside of the contractual relationship." Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992).

Defendants assert that based on these rules, Plaintiff cannot state a claim for tortious interference with a business relationship because the Defendants were parties to the business relationship. However, the rules are not absolute and contain a notable exception. Specifically, "the privileged interference enjoyed by a party that is integral to the business relationship is not absolute. The privilege is divested when the defendant acts solely with ulterior purposes" and acts against the principal's best interest. O.E. Smith's Sons, Inc. v. George, 545 So. 2d 298, 299 (Fla. 1st DCA 1989)(internal citations and quotations omitted). Further, "an agent can be considered a third party . . . if the agent acts outside the scope of agency or is not acting in the principle's [sic] best interests." Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F. Supp. 2d 1355, 1368 (M.D. Fla. 2007).

Therefore, the Court must determine whether Plaintiff has demonstrated beyond a speculative level that Defendants were either third parties to the business relationship or, if they were actual parties, that the exception to the privilege to

interfere applies.

## A. Cassera

The Complaint states that Cassera is the president and chairman of the board of Tri-State and states that Plaintiff reported directly to Cassera. (Doc. # 1 at ¶¶ 4, 15). Accordingly, the Court finds that Cassera, as the corporate agent of Tri-State, was a party to the business relationship between Plaintiff and Tri-State.[3]

However, as noted above, Cassera's privilege to interfere with the business relationship between Plaintiff and Tri-State may be divested if Cassera acted with ulterior motives outside the scope of his employment and if his actions were not in the best interest of Tri-State. The Complaint alleges that Cassera's interference "was malicious, willful, oppressive, and/or in reckless disregard of the rights of [Plaintiff]." (Doc. # 1 at ¶ 49). However, "because an allegation that [defendant] was maliciously motivated does not

---

[3] A further indication that Cassera, as well as Services, was a party to the business relationship is Plaintiff's allegation that Cassera and Services failed to pay commissions to Plaintiff following their acquisition of Tri-Overload Staffing, Inc. (Doc. # 1 ¶¶ 46-47). Given that the employment agreement that obligated commission payments was entered into by Plaintiff and Tri-State only (Id. at ¶ 44), Cassera and Services would necessarily have to be a party to that relationship in order to have any obligation to pay commissions to Plaintiff.

by itself mean that [defendant] acted outside the scope of his employment, some further allegation is required to show that [defendant] . . . was not entitled to the protection usually afforded to persons acting in the interest of their employers." Sloan v. Sax, 505 So. 2d 526, 528 (Fla. 3d DCA 1987). Courts have found allegations that the defendant acted outside the scope of employment, acted to the detriment of the employer, and acted without honest belief that his action would benefit the employer are necessary and sufficient to classify an agent as a third party. E.g., id.; Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. 4th DCA 1999).

The Court's review of the Complaint reveals that such necessary allegations are lacking. The Complaint does not allege that Cassera acted at any time outside the scope of his employment, that his actions were to the detriment of Tri-State, or that he acted without honest belief that his actions would benefit Tri-State. Plaintiff argues that the Court should infer that Cassera was acting outside the scope of his employment and to the detriment of Tri-State based upon Plaintiff's allegation that Cassera "engaged in acts designed to cause [Plaintiff's] client's to terminate their relationships with Tri-State, thus interfering with

[Plaintiff's] entitlement to further Commissions." (Doc. # 1 at ¶ 45). However, Plaintiff does not allege that the reason Cassera undertook such actions was solely to interfere with Plaintiff's commissions, only that such was a consequence of Cassera's actions. Given that businesses have innumerable legitimate and beneficial reasons for terminating relationships with clients, the Court is not convinced that Plaintiff's proffered inference is reasonable or warranted in this case.

Without further allegations of the kind that courts have previously found necessary, including allegations that the party acted outside the scope of employment, acted to the detriment of the employer, and acted without honest belief that his action would benefit the employer, the Court is not convinced that Plaintiff has alleged sufficient factual allegations to raise Plaintiff's right to relief above a speculative level. The Court therefore grants the Motion to Dismiss as to Cassera without prejudice, with leave to amend the Complaint to allege such necessary allegations if possible.

**B.    Services**

Regarding Services, the Complaint states that "[a]s part of Services's desire to expand its business, in late 2007,

various agents of Services . . . entered into negotiations with [Plaintiff] to purchase all the assets of the Acquired Businesses and formed an entity through which to make the acquisition." (Id. at ¶ 10). Following this, Plaintiff and Tri-State executed an agreement for the asset purchase. (Id. at ¶ 11). Further, Services agreed to serve as guaranty for all of Tri-State's obligations to Plaintiff under the asset purchase and employment agreements. (Id. at ¶ 14). Finally, part of Plaintiff's responsibilities included developing potential acquisition targets for Services. (Id. at ¶ 15). Based on these allegations, the Court finds that Services was a party to the business relationship between Plaintiff and Tri-State and, as such, enjoyed a qualified privilege to interfere with the business relationship.

However, as discussed above, the privilege of interference Services enjoyed was not absolute and could be divested if Services acted solely with ulterior purposes and against the best interest of Tri-State. See O.E. Smith's Sons, 545 So. 2d at 299. As with Cassera, the only allegation in the Complaint in this regard is that Services engaged in acts designed to cause certain clients to terminate their relationship with Tri-State, which resulted in Plaintiff ceasing to earn commissions for those clients. (Doc. # 1 at

¶ 45).

For the same reasons stated above regarding Cassera, the Court finds this sole allegation insufficient to divest Services of the privilege to interfere that it enjoyed as a party to the business relationship. The Court therefore grants the Motion to Dismiss as to Services without prejudice, with leave to amend the Complaint to allege such necessary allegations if possible.

C. **Corporate Resource Services**

Finally, Defendants assert that Corporate Resource Services is a "related and/or affiliated entity" of Cassera and/or Services and therefore, is a related and/or affiliated entity of Tri-State. (Doc. # 6 at 5) (citing Doc. # 1 at ¶ 46). However, the Court is not persuaded that the privilege provided to Cassera and Services as parties to the business relationship extends to protect Corporate Resource, a company that is not itself affiliated with Tri-State and, based on the face of the Complaint, had no involvement with the employment agreement between Plaintiff and Tri-State. To hold otherwise would lead to absurd results in which any person or company that is "related and/or affiliated" with Cassera or Services could claim a privilege to interfere with Tri-State's business relationships. The Court declines to so hold.

Construing the factual allegations within the Complaint in the light most favorable to the Plaintiff, the Court cannot agree that Corporate Resource is anything more than a third party to the business relationship. Therefore, finding all of the elements of a tortious interference claim sufficiently alleged as to Corporate Resource, the Court denies the Motion to Dismiss as to Corporate Resource.

Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED**:

(1) Defendants' Motion to Dismiss Count III of Plaintiff's Complaint is **GRANTED** in part without prejudice as to Defendants Cassera and Services. Plaintiff may file an amended complaint on or before February 27, 2012. If Plaintiff does not file an amended complaint by February 27, 2012, the Court will proceed on the well-pled claims in the Complaint.

(2) Defendants' Motion to Dismiss Count III of Plaintiff's Complaint is **DENIED** in part as to Defendant Corporate Resource Services, Inc.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 13th day of February, 2012.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record